FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 26 2004

JAMES W. McCORMACK, CLERK
By:_____
                DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

MICHELLE L. FORD; CAROL E. HARRIS AND
SHERYL A. WILLIFORD LEMONS                                    PLAINTIFFS

VS.          NO. 4-04 CV0000071 GTE

NUVELL FINANCIAL CORPORATION, A
Foreign Corporation and RICHARD HAIRSTON, Individually        DEFENDANTS

## COMPLAINT

Come now the plaintiffs, Michelle L. Ford, Carol E. Harris and Sheryl A. Williford Lemons, by and through their attorneys, MAYS, BYRD & ASSOCIATES, P.A., and alleges as follows:

### I. JURISDICTION AND VENUE

1. This action is brought to remedy discrimination on the basis of sex in the terms, conditions and privileges of employment and to remedy retaliation against the plaintiffs herein pursuant to Title VII, the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) *et seq.* ("Title VII") and plaintiffs seek redress pursuant to Arkansas State Law Claims.

2. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. §2000(e)(f) and (g) and pursuant to plaintiffs state law remedies.

3. Plaintiff Michelle Ford, a female and a resident of the State of Arkansas, filed charges of discrimination against defendant Nuvell Financial Services Corporation (hereafter, "Nuvell") with the Equal Employment Opportunity Commission ("EEOC") on May 2, 2002 and February 28, 2003, complaining of the acts of sex discrimination alleged and described herein, including retaliation. (See **Exhibit Nos. 1 and 2**)

4.  Plaintiff Carol E. Harris, a female and a resident of the State of Arkansas, filed charges of discrimination against defendant Nuvell with the EEOC on or about May 2, 2002 and February 24, 2003, complaining of the acts of discrimination alleged and described herein, including retaliation. (See **Exhibit Nos. 3 and 4**)

5.  Plaintiff Sheryl E. Lemons, a female and a resident of the State of Arkansas, filed charges of discrimination against defendant Nuvell with the EEOC on or about May 2, 2002 and July 10, 2003, complaining of the acts of discrimination alleged and described herein, including retaliation. (See **Exhibit Nos. 5 and 6**)

6.  Plaintiff Michelle Ford received her Notices of Right to Sue from the EEOC. (See **Exhibit Nos. 7 and 8**) Plaintiff Carol Harris received her Notices of Right to Sue. (See **Exhibit Nos. 9 and 10**) Plaintiff Sheryl W. Lemons received her Notices of Right of Sue. (See **Exhibit Nos. 11 and 12**)

7.  The Plaintiffs herein have complied fully with all prerequisites to jurisdiction of this Court under Title VII. Jurisdiction of the Court is proper under §706(f)(3) of Title VII 42 U.S.C. §2000e-5(f)3. This Court may exercise supplemental jurisdiction of plaintiffs' state law claims in accordance with 28 U.S.C. §1367.

## II. PARTIES

8.  Plaintiff Michelle L. Ford was employed by Defendant beginning in April of 2001 until her involuntary termination on or about January 12, 2004. Plaintiff Carol E. Harris was employed with the Defendant beginning in March of 2001 until her involuntary termination on or about February 14, 2003 and Plaintiff Sheryl W. Lemons was employed by the Defendant on or about December 1998 until her involuntary termination on June 23, 2003. Plaintiffs are all residents of Pulaski County, Arkansas.

9. Defendant Nuvell is a foreign corporation headquartered in Little Rock, Arkansas at 17500 Chenal Parkway, Little Rock, Arkansas. Nuvell is a wholly-owned subsidiary of General Motors Acceptance Corporation. Said Defendant Nuvell is a foreign corporation registered as such in the State of Delaware.

10. Defendant Richard Hairston (hereafter "Hairston"), at all times relevant herein, was an employee of Defendant Nuvell in a management level position. Upon information and belief, Defendant Hairston is a resident of Pulaski County, Arkansas.

### III. FACTUAL ALLEGATIONS

### MICHELLE FORD

11. Plaintiff Michelle Ford was hired by Defendant Nuvell on or about April 2, 2001 as an Account II Representative. Ms. Ford was initially sexually harassed by defendant Hairston in May of 2001. At that time, Hairston contacted Plaintiff at her desk phone and began to make personal inquiries starting with her home telephone number and further inquiring whether or not Plaintiff was married. In addition, Hairston asked Plaintiff if she was dating anyone. Plaintiff was upset and dismayed at these questions and initially thought they had to do with matters related to personnel until the questions grew more and more personal. Plaintiff, at that time, told Mr. Hairston that she did not "play games" and that she "did not mix business with pleasure" and "not to approach her in that manner again". Plaintiff hung up the phone and did not report the incident at that time.

12. On April 2, 2002 at approximately 5:00 p.m. Plaintiff was speaking with a co-worker and Defendant Hairston. The conversation involved the time of day that Defendant Hairston was leaving work. Defendant Hairston proceeded to walk up to the Plaintiff and to rub her right thigh near her crotch area. Plaintiff Ford became furious, there was no manager on the floor for her to report the incident to at that time. However, the co-worker who Plaintiff Ford had been speaking

with, reported the incident to Kevin McKinney who was a manager. On that same day, Plaintiff Ford was also called into Mr. McKinney's office and she personally reported to him the incident that had occurred on that same day. Mr. McKinney affirmed that he had been previously told by Plaintiff's co-worker of the sexual harassment and Mr. McKinney further told Plaintiff that he would report the incident to Linda Nicholas, a Senior Manager. Plaintiff was never interviewed or spoken with about the incident. Plaintiff has never been informed if an investigation would be conducted. However, Defendant Hairston continued to sexually harass Plaintiff.

13. On or about April 11, 2002, Plaintiff Ford was sitting at her desk when Defendant Hairston came over to her desk and started rubbing Plaintiff's arms and massaging Plaintiff's neck. Plaintiff pulled away from Defendant Hairston and reported the incident once again to Kevin McKinney.

14. Up until this point, Plaintiff had not been contacted by Human Resources or any senior level management individual regarding the incidents that had occurred on April 2.

15. On or about April 12, 2002, Plaintiff Ford was once again sitting at her desk and Defendant Hairston approached her and started rubbing and massaging Plaintiff's shoulder area. Plaintiff pulled away from Defendant Hairston and became very enraged, left her cubicle and went to the cubicle of co-workers, allowing herself an opportunity to calm down. Defendant Hairston followed Plaintiff Ford to the cubicle of her co-workers and grabbed Plaintiff's dress in the area of her buttocks and proceeded to pull on it. Plaintiff Ford immediately went to the Human Resources office to report the incident. Plaintiff gave a statement to Mary McKenzie and to Kathleen McComber. Plaintiff Ford asked that they take immediate steps to put a stop to Mr. Hairston's conduct. Plaintiff also gave Ms. McKenzie and Ms. McComber the names of witnesses to the incident of April 12, 2002.

16. On or about April 15, 2002, Defendant Hairston once again came to Plaintiff Ford's desk and starting rubbing her arm. Plaintiff pulled away, got up and went to her Senior Manger's office (Linda Nicholas) and proceeded to tell Ms. Nicholas about what she considered to be the inappropriate touching by Defendant Hairston. At that time, Plaintiff Ford also told Ms. Nicholas the names of witnesses to the prior incidents. Ms. Nicholas proceeded to tell Plaintiff, "don't worry about it because Human Resources will investigate it and if he does it again, just slap the shit out of him." However, the sexual harassment did not abate. Plaintiff witnessed Defendant Hairston inappropriately pinching Plaintiff Carol Harris in her waist area on April 15, 2002. This incident occurred after Ford had reported Defendant Hairston's conduct to Linda Nicholas on April 15, 2002.

17. Ford had been told when she reported the incident of April 12, 2002 that the incidents would be checked into and that someone would be getting back with her. During the course of these incidents, no one ever communicated with Plaintiff whether or not there was an ongoing investigation, whether witnesses were being interviewed or that anything would be done. Plaintiff never received any communication from Defendant Nuvell as to the status of any investigation into the allegations she had made.

18. On or about April 16, 2002, in the presence of Ford and other co-workers, a fellow co-worker of Plaintiff yelled out loud to Plaintiff asking her "Michelle, why did you get Richard Hairston fired for rubbing on your thighs?" Plaintiff Ford felt embarrassed and humiliated and upon information and belief, believes that the alleged confidentiality of Defendant Nuvell's process had been compromised. Ford had not been told by anyone in management or with Human Resources what course of action would be taken.

## CAROL HARRIS

19. Plaintiff Carol Harris ("Harris") was employed by Defendant Nuvell on or about March 12, 2001 as an Accounts Representative I. In December of 2001, Defendant Hairston approached Plaintiff Harris in a sexual manner and began rubbing Plaintiff's shoulders. Plaintiff Harris asked Defendant Hairston not to touch her. Plaintiff Harris did not report this incident.

20. On or about February 14, 2002, Plaintiff Harris was standing at a fax machine when Mr. Hairston approached her and placed his hand in the lower area of Plaintiff's neck. The touching was very uncomfortable and Plaintiff felt violated and was disturbed by this unwanted touching. Plaintiff did not report this particular incident. On or about April 11, 2002, Defendant Hairston was the only available manager on Plaintiff's floor and Plaintiff needed help on an account. Harris proceeded to enter Defendant Hairston's office. While in Defendant Hairston's office, he came from around his desk to where Plaintiff was and proceeded to place his hands around Harris' waist and to tell her "You need to be a little bit nicer." Plaintiff became very angry and embarrassed by this unwanted touching. Plaintiff pushed herself away and walked out of Hairston's office without saying anything. Plaintiff Harris reported this incident to her immediate supervisor, Kevin McKinney. No one got back in touch with Harris. She was not told of any investigation nor interviewed.

21. On or about April 14, 2002, while Harris was at the desk of Plaintiff Ford, Hairston walked by and pinched Harris on the left side of her waist and kept walking. Plaintiff Harris became extremely angry about this incident especially in light of having reported Defendant Hairston three days prior to the current incident. Harris, again, reported what she perceived to be sexual harassment to her manager, Kevin McKinney. Mr. McKinney told Harris to report the incident to Mr. McKinney's Senior Manager, Linda Nicholas. Plaintiff reported the incident to Ms. Nicholas. Ms.

Nicholas told Plaintiff to report the incident to Tom Jester. Plaintiff reported the incident to Mr. Jester and spoke with Mr. Jester in his office. She inquired if there would be anything done about Mr. Hairston's actions. Mr. Jester informed Plaintiff that "we are working on it." Plaintiff left Mr. Jester's office. Plaintiff was told by her Manager, Kevin McKinney, after she reported the incident of April 14, 2002, that there was nothing that he could do. At all times relevant herein, Mr. Hairston's conduct was unwelcome and unwanted by Harris.

## SHERYL W. LEMONS

22. Plaintiff Sheryl W. Lemons ("Lemons") began working for Defendant Nuvell in December of 1998. From approximately July of 2000 until April of 2001, Plaintiff Lemons was sexually harassed by Defendant Hairston. During this time period, Hairston would stare at Plaintiff Lemons' breasts, buttocks, crotch and legs. This was an ongoing, constant behavior which made the Plaintiff feel very uncomfortable, embarrassed, angry and humiliated. During this period, Plaintiff Lemons did not report the sexually harassing conduct to anyone.

23. In approximately June of 2001, Hairston again sexually harassed Lemons. This time, the sexual harassment took the form of Defendant Hairston touching the Plaintiff. Defendant Hairston would rub the back of Plaintiff's neck and message her shoulders while she was on the phone. Lemons felt very uncomfortable and would move away from Defendant Hairston. Lemons reported the June 2001 incident of sexual harassment to Kevin McKinney. Lemons was never interviewed, told an investigation would be done or heard anything from the Human Resources office.

24. In or about March of 2002, Defendant Hairston touched Plaintiff Lemons' buttocks. Plaintiff reported this incident to Kevin McKinney in approximately July/August of 2001. No one ever reported back to the Plaintiff or communicated with her that an interview would be conducted

or an investigation would be done. Near the end of 2001, Kevin McKinney became Plaintiff's manager and the sexual harassment by Defendant Hairston continued.

25.  In January, February and April of 2002, Lemons was still being sexually harassed by Defendant Hairston in the form his touching her. On or about April 11, 2002, Defendant Hairston came to Plaintiff's work area and began to stroke Plaintiff's upper arm while she was on the telephone. Lemons pulled her arm away and after her phone conversation, reported the incident to her Manager, Kevin McKinney. Mr. McKinney told her to report the incident to his Senior Manager, Linda Nicholas – which Lemons did. Lemons also spoke with the Vice President of Human Resources, Glenn Eisenhower. Even after Plaintiff reported the incidents to Kevin McKinney and to other individuals named herein, Defendant Hairston continued to be in her immediate work environment. Defendant Hairston, subsequent to Plaintiff Lemons' last reported incidents of sexual harassment, approached her and asked her what was going on. Plaintiff felt uncomfortable and intimidated by Defendant Hairston approaching her. At all times relevant herein, Plaintiff Lemons rejected Defendant Hairston's unwanted touching and advances.

## IV. GENERAL ALLEGATIONS

26.  Plaintiffs named herein further allege that they were subjected to unwelcome sexual harassment which harassment was based on the Plaintiffs' sex.

27.  The unwelcome sexual conduct was sufficiently severe so as to alter the terms and condition of the Plaintiffs' employment and to create a hostile and offensive work environment.

28.  That all Plaintiffs herein, at various times, used the preventive measures that were in place at Nuvell and sought to avoid harm. Plaintiffs suffered damages as a result of the harassment.

29.  That a pattern of sexual harassment existed and Defendant Nuvell knew or should have known of such conduct but failed to take prompt corrective measures to end the sexual

harassment by Defendant Hairston.

## V. RETALIATION

30. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 11 through 29 of this Complaint with the same force and effect as if set forth herein.

31. Defendant Nuvell has retaliated against the Plaintiffs including terminating the Plaintiffs on the basis of their having complained of discrimination in violation of Title VII.

32. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's retaliatory practices unless and until this Court grants relief.

## VI. PENDANT STATE CLAIM

33. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 11 through 29 of this Complaint with the same force and effect as if set forth herein.

34. Defendant Hairston engaged in the conduct alleged herein in reckless disregard of the probability of causing the Plaintiffs to suffer emotional distress. Plaintiffs herein suffered emotional distress which included, outrage, shock, humiliation, embarrassment, shame and fear. Such emotions were reasonably likely to occur based on the sexual harassment experienced by Plaintiffs. Defendant Nuvell's failure to take immediately and appropriate action in response to the Plaintiffs' complaint and complaints by other victims of sexual harassment by Defendant Hairston caused Plaintiffs further emotional distress.

35. Defendant Nuvell has a duty to adequately supervise employees. Defendant Nuvell breached that duty by allowing Defendant Hairston to perpetuate a pattern of sexual harassment of female employees of Defendant Nuvell. Defendant Nuvell's negligence caused the Plaintiffs to suffer.

36. As a result of Defendants' discriminatory acts, Plaintiffs have suffered and will continue to suffer monetary damages, including damages for the emotional distress.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court enter a judgment:

(a) declaring that the acts and practices complained of herein are in violation of Title VII;

(b) enjoining and permanently restraining these violations of Title VII;

(c) directing Defendant Nuvell to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

(d) award Plaintiffs compensatory and punitive damages;

(e) direct Defendant Nuvell to place Plaintiffs in the positions they would have occupied but for Defendants' discriminatory and retaliatory treatment of the Plaintiffs and make Plaintiffs whole for all earnings they would have received but for Defendant Nuvell's discriminatory and retaliatory treatment, including, but not limited to, wages, pension and other lost benefits;

(f) award Plaintiffs the cost of this action, together with reasonable attorney's fees as provided by §706(k) of Title VII, 42 U.S.C. §2000e-6(k);

(g) granting such other and further relief as this Court deems necessary and proper.

## VIII. DEMAND FOR TRIAL BY JURY

Pursuant to the applicable Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Respectfully submitted,

MAYS, BYRD & ASSOCIATES, P.A.
415 Main Street
Little Rock, AR 72201
(501) 372-6303

BY: _____
ARKIE BYRD   #80020
Attorney for Plaintiffs

F:\Donna Johnson\Arkie Byrd\Nuvell T7\TVII Complaint.wpd

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# *Exhibits Attached to Original Document in Courts's Case File*